**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI**

| | | |
|---|---|---|
| **SA RECYCLING LLC,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **JURY TRIAL DEMANDED** |
| **v.** | ) | |
| | ) | **Case No.:**    4:25-cv-01349 |
| **ROUTE 185 RECYCLING, LLC;** | ) | |
| **185 RECYCLING LLC; MID-ILLINOIS** | ) | |
| **CONCRETE, INC.; RYAN FOSTER;** | ) | |
| **OSCAR ORTIZ; and JUAN PEREZ,** | ) | |
| | ) | |
| **Defendants.** | ) | |

### COMPLAINT FOR DAMAGES

Plaintiff SA Recycling LLC, ("SA Recycling" or "Plaintiff") brings this Complaint against Route 185 Recycling, LLC, 185 Recycling LLC (collectively "185 Recycling" or "Defendant 185 Recycling"), Mid-Illinois Concrete, Inc., Ryan Foster ("Defendant Foster"), Oscar Ortiz ("Defendant Ortiz") and Juan Perez  ("Defendant Perez" and, together with Defendant 185 Recycling, Mid-Illinois Concrete, Inc., Defendant Foster and Defendant Ortiz, collectively "Defendants") and alleges as follows:

### INTRODUCTION

1.      This action concerns Defendants' fraudulent scheme to deceive SA Recycling into overpayments of millions of dollars for recyclable materials.

2.      SA Recycling is the nation's foremost scrap metal recycling company, with a broad network of state-of-the-art facilities throughout the United Stated that make it the recognized leader in the industry.  By providing a steady supply of recycled raw materials to manufactures in domestic and international markets, SA Recycling supports manufacturing and industrial development while promoting environmental stewardship at a global level.

3.      185 Recycling, its owner, two Illinois concrete plants, and two of SA Recycling's

own employees, engaged in a multi-year conspiracy to defraud SA Recycling by adding concrete washout (i.e., non-recyclable material) to 185 Recycling's daily deliveries of recyclable scrap metal thereby artificially increasing the weight to obtain higher payments from SA Recycling. In furtherance of their conspiracy to defraud SA Recycling and unbeknownst to SA Recycling, the owner of 185 Recycling paid SA Recycling's involved employees to ignore the concrete washout and actively coordinate 185 Recycling's deliveries to prevent SA Recycling from uncovering the scheme. As a result of their fraudulent conduct, SA Recycling overpaid 185 Recycling millions of dollars for the weight of the non-recyclable material. SA Recycling only recently discovered the conspiracy when an informant knowledgeable of the conspiracy disclosed the scheme to SA Recycling.

## **PARTIES**

4.      SA Recycling is a limited liability company organized and existing under the laws of Delaware with its principal place of business in California. Its members are citizens and residents of the state of Florida, the state of Colorado, the state of California, and the country of Australia.

5.      Upon information and belief, Route 185 Recycling, LLC was and is a limited liability company organized and existing under the laws of Illinois with its principal place of business in Illinois. Upon information and belief, the members of Route 185 Recycling, LLC are citizens and residents of the state of Illinois.

6.      Upon information and belief, 185 Recycling, LLC was and is a limited liability company organized and existing under the laws of Illinois with its principal place of business in Illinois. Upon information and belief, the members of 185 Recycling, LLC are citizens and residents of the state of Illinois.

7.      Upon information and belief, Mid-Illinois Concrete, Inc. is an Illinois corporation incorporated in Illinois with its principal place of business in Illinois.

8.      Upon information and belief, at all times relevant to this Complaint, Defendant Ryan Foster was a citizen and resident of the state of Illinois. Upon further information and belief, SA Recycling alleges that Ryan Foster is the owner of 185 Recycling, LLC and is the mastermind behind this extensive and substantial scheme to defraud SA Recycling out of millions of dollars.

9.      Upon information and belief, at all times relevant to this Complaint, Defendant Oscar Ortiz was a citizen and resident of the state of Illinois.

10.     Upon information and belief, at all times relevant to this Complaint, Defendant Juan Perez was a citizen and resident of the state of Illinois.

## JURISDICTION AND VENUE

11.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332. Upon information and belief, complete diversity exists between Plaintiff and all named Defendants, as Plaintiff is a limited liability company with no members who are citizens of the state of Illinois. Upon information and belief, Defendant 185 Recycling's members are citizens of Illinois, Defendant Mid-Illinois Concrete, Inc. is a citizen of Illinois, Defendant Foster is a citizen of Illinois, Defendant Ortiz is citizen of the state of Illinois, and Defendant Perez is a citizen of the state of Illinois.  The amount in controversy exceeds $75,000 exclusive of interest and costs.

12.     The Court has subject matter jurisdiction under 28 U.S.C. § 1331 as this action arises under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961-1968.

13.     This Court has personal jurisdiction over Defendants as they have purposefully availed themselves of the benefits of Missouri by conducting business in Missouri, engaging in

systematic and continuous business activities in Missouri, and committing tortious acts within and targeted at the state of Missouri.

14.     Venue is proper in this District as a substantial part of the events or omissions giving rise to the claim occurred in this District.

## STATEMENT OF FACTS

15.     SA Recycling is one of the world's largest full-service recyclers of ferrous and non-ferrous metals.  Each year, SA Recycling recycles millions of tons of scrap metal each year, supplying manufacturers with a sustainable alternative to newly mined resources.  By reducing the demand for raw mineral extraction, conserving natural resources, lowering energy consumption, mitigating greenhouse gas emissions, and preventing recyclable materials from overburdening landfills, SA Recycling's operations have significant environmental benefits while supporting domestic and global industry.

16.     Defendant 185 Recycling has been involved in the purchasing of recyclable materials since at least 2011. Defendant 185 Recycling markets itself as a buyer of all ferrous and non-ferrous material and conducts its operations out of its facilities located at 22291 IL-185, Fillmore, IL 62032 and 1150 E First St., Beckemeyer, IL 62219

17.     Defendant Foster is, upon information and belief, the owner and manager of Defendant 185 Recycling. Defendant Foster makes key decisions on behalf of the company and is responsible for its business activities including the creation of a fraudulent scheme, spearheaded by Defendant Foster himself, to defraud SA Recycling out of millions of dollars.

18.     SA Recycling is informed and believes, and thereon alleges, that Defendants 185 Recycling and Foster previously perpetuated a similar scheme against at least one other recycling company until they were caught and cutoff from doing any further recycling business with that

other entity.

19.    Defendant Ortiz and Defendant Perez are SA Recycling employees that worked in conjunction with the other Defendants in defrauding SA Recycling and causing it to overpay for the recyclable material delivered by 185 Recycling.  Defendant Mid-Illinois Concrete, Inc. ("Mid Illinois Concrete") is a concrete plant that worked in unison to provide concrete washout to 185 Recycling to artificially increase the weight of the 185 Recycling loads taken to the SA Recycling facility.

20.    SA Recycling operates a network of recycling facilities across the United States that include feeder yards and processing facilities like the facility at located at 3620 N. Hall Street, St. Louis, MO 63147 ("McKinley Facility") that purchase scrap metal from individuals, municipalities, and industrial businesses, including other recycling companies.

21.    As a processing facility, the McKinley Facility has a large shredder that shreds scrap metal pieces to the size of a fist.  After the metal is shredded, it goes through a proprietary sorting system that separates the aluminum, brass, and other non-ferrous metals from the shredded ferrous material, leaving just non-recyclable material.  SA Recycling then sells the separated, recycled metal to mills and refineries that melt it down to create new metal products.

22.    SA Recycling pays the customer based on the weight of the recyclable materials. Upon entering the facility, a vehicle –typically, a semi-truck towing a forty to fifty foot trailer full of recyclable scrap metal (also referred to as shreddable material) is weighed on a truck scale and the driver is provided a weigh ticket identifying the vehicle and the loaded weight to give to the inspector at the unloading area.  The customer then proceeds to the unloading area, gives the inspector the ticket, and the trailer is unloaded by a crane that removes the shreddable material from the trailer and places it on a conveyor to the shredder. If the inspector or the crane operator

observes an excessive amount of non-recyclable material in the load, they are required to write a deduction on the ticket so that the customer is not paid for non-recyclable material because it is of no value to SA Recycling and, in fact, costs SA Recycling money to dispose of such non-recyclable material. The unloaded vehicle is then weighed on a certified truck scale and the customer is paid based on the difference between the loaded and unloaded weight minus any deductions for non-recyclable material.

23.    Defendant 185 Recycling was a regular commercial customer of SA Recycling. As such, Defendant 185 Recycling and SA Recycling had an implied contract pursuant to which Defendant 185 Recycling sold shreddable materials to SA Recycling based on the weight of said materials and according to the purchase price set by SA Recycling based on the market. The purchase price is paid per ton of recyclable material.

24.    As a regular commercial customer of SA Recycling, Defendant 185 Recycling purchased recyclable materials from third parties, which were collected, stored, and sorted in Defendant 185 Recycling's facilities. When the volume of the recyclable materials stored at Defendant 185 Recycling's yards reached a certain threshold amount, Defendant 185 Recycling would load the recyclable material into fifty-foot open top trailers pulled by semi-trucks and deliver the loads of shreddable material to the McKinley Facility. Defendant 185 Recycling delivered multiple loads to the McKinley Facility on a daily basis. Over the last twelve months alone, Defendant 185 Recycling has delivered and been paid for approximately twenty thousand tons of recyclable material. Defendant 185 Recycling delivered and sold these materials for profit based on the weight of said materials.

25.    In August of 2025, SA Recycling was contacted by a confidential informant ("Confidential Informant") concerning a large ongoing fraud scheme at the McKinley Facility led

6

by Defendants.

26.    According to the Confidential Informant, Defendants created a scheme wherein Defendant 185 Recycling loaded shreddable materials into tractor-trailers and layered non-recyclable materials such as concrete washout within the load of shreddable materials using a front-end loader to artificially increase the weight of the load. Defendant 185 Recycling would layer the concrete washout throughout the load to make it harder to detect.  Upon information and belief, this fraud scheme was orchestrated by Defendant Foster who instructed Defendant 185 Recycling employees to drive to ready mix concrete plants, including but not limited to Mid Illinois Concrete, after unloading recyclables at the McKinley Facility. Once at the ready mix facility, the Defendant 185 Recycling employees would pick up several tons of concrete washout and then haul it back to Defendant 185 Recycling facilities. Upon arrival, Defendant 185 Recycling would dump the load of washout on the ground so it could be sprinkled back into the next load of shreddables delivered at the McKinley Facility thereby artificially increasing the weight.

27.    Upon information and belief, Defendant Foster instructed the Defendant 185 Recycling drivers to bring the concrete washout loads to the McKinley Facility only during the shifts of two SA Recycling employees – Defendant Ortiz and Defendant Perez ("SA Involved Employees") who participated in the ongoing scheme by ignoring the excessive amount of concrete washout and not marking deductions for 185 Recycling loads and signaling Defendant 185 Recycling truck drivers when it was safe to enter the facility.

28.    Defendant Ortiz is an inspector at the McKinley Facility.  It is his responsibility to inspect the delivered loads of recyclable material to, among other things, ensure that the loads do not contain an excessive amount non-recyclable material and, if they do, he is required to write down a weight deduction on the weigh ticket to prevent overpayment for non-recyclable material.

Defendant 185 Recycling paid Defendant Ortiz to ignore the concrete washout in 185 Recycling's loads and not write down deductions on their weigh tickets.

29.    Defendant Perez is a crane operator at the McKinley Facility removing the shreddable material from the trailers and placing it on the shredder conveyor belt.  If he observes excessive non-recyclable material while unloading a trailer, he is required to radio to the inspector instructing him to write down a weight deduction on the weigh ticket to prevent overpayment for non-recyclable material.  Defendant 185 Recycling paid Defendant Ortiz to ignore the concrete washout in 185 Recycling's loads and not instruct the inspectors to make weight deductions. A photo taken of concrete washout falling from the crane above the 185 Recycling truck is included below.



30.    Defendant Perez also used the crane to sweep out Defendant 185 Recycling's trailers with chain link fence after they were unloaded to remove any remaining concrete washout to hide the evidence of the scheme and make the vehicles as light as possible when they were reweighed to ensure maximum overpayment to Defendant 185 Recycling.  Defendant Foster told Defendant Perez that he would not be paid his bribe if the trucks weighed more than fifty thousand pounds unloaded.

31.    Defendant 185 Recycling drivers were instructed to only queue in a line serviced by the SA Involved Employees.  If the SA Involved Employees were not at their post or if the SA Recycling general manager was in the yard, the SA Involved Employees would inform Defendant Foster or the Defendant 185 Recycling drivers and Defendant Foster would instruct the drivers to wait around the corner from the McKinley Facility until the SA Involved Employees arrived back at their posts and the general manager was no longer in the yard.  Once the SA Involved Employees were back and the general manager was gone, Defendant Foster would give them the all clear to enter the facility to deliver their loads.

32.    Defendant 185 Recycling was paid by SA Recycling for the purchase of the shreddable materials comingled with non-recyclable concrete washout through interstate wire transfers (ACH payments).

33.    An average load is fifteen tons and, according to the Confidential Informant, Defendant 185 Recycling's loads would contain approximately two to four tons of non-recyclable concrete washout.  That equates to approximately thirteen to twenty-seven percent of each load being non-recyclable concrete washout.  Over the last twelve months alone, Defendant 185 Recycling has delivered and been paid for approximately twenty thousand tons of recyclable material.  The average price of shreddable material over the last twelve months has been approximately two hundred forty-one dollars per ton and the cost to dispose of concrete washout is approximately thirty-five dollars per ton.

34.    The McKinley Facility's sorting system is not able to remove it from the "heavy" shredded metals so it is shipped to SA Recycling's processing plant causing SA Recycling to incur additional shipping costs.  SA Recycling also has to sort the "heavies" contaminated with the concrete washout again at its processing plant to remove the concrete washout causing SA

Recycling to incur additional processing costs for doubling processing the material. Furthermore, because the processing plant is not able to remove all the concrete washout before SA Recycling ships the processed "heavies" to its customers, which causes SA Recycling to incur deductions from its customers for the contaminated metal.

35.     Upon information and belief, the Defendant 185 Recycling drivers who participated in the scheme were paid an additional $40 per load of concrete washout by Defendant 185 Recycling and Defendant Foster.

36.     The SA Involved Employees accepted illicit payments in the form of bribery by the Defendant 185 Recycling drivers for not deducting the weight of the concrete washout. Upon information and belief, the SA Recycling Involved Employees were paid $200 every other week by Defendant 185 Recycling and Defendant Foster.

37.     The concrete washout was provided to the Defendant 185 Recycling drivers by Vandalia Ready Mix, Greenville Ready Mix, and Red-E-Mix LLC. SA Recycling's investigation has revealed that Defendant Mid Illinois Concrete is the owner of the Vandalia and Greenville plants and sold the concrete washout to Defendant 185 Recycling with knowledge that concrete washout was being used to weigh down Defendant 185 Recycling trucks to artificially increase the weight to cause SA Recycling to overpay for such material. The image below depicts a Defendant 185 Recycling truck after the shreddable materials had been removed at the McKinley Facility.



38.     Due to the deceptive and fraudulent scheme utilized by Defendants, SA Recycling has been damaged by vastly overpaying for the weight of recyclables that were artificially and fraudulently inflated.

39.     By comingling concrete washout with recyclable materials and paying the SA Involved Employees to ignore the foreign materials, Defendants caused the foreign materials to enter the stream of commerce and to be resold to other entities across state lines.

40.     Upon learning of this scheme, SA Recycling issued a pre-litigation hold letters to Defendants. Pre-Litigation Hold Letters attached as **Exhibit 1**.

I.      **THE 185 RECYCLING ENTERPRISE**

41.     At all relevant times, Defendant 185 Recycling, Defendant Foster, Mid Illinois Concrete and the SA Involved Employees ("185 Recycling Enterprise") constituted an "enterprise" within the meaning of 18 U.S.C. § 1961(4).

42.     The 185 Recycling Enterprise is and was an association-in-fact entity that engaged

in activities affecting interstate commerce including, but not limited to the fraudulent sale of shreddables facilitated through interstate wire transfers (ACH payments) and causing foreign materials such as concrete washout to be commingled with recyclable material and thereafter enter the stream of commerce.

43.     At all relevant times to this Complaint, the common and shared purpose of the 185 Recycling Enterprise was to deceptively and artificially inflate the weight of the shreddables delivered to SA Recycling with non-recyclable material in order to profit from SA Recycling's overpayment for said inflated loads.

44.     The 185 Recycling Enterprise was created more than four years ago, continues today and will continue in the future for common purpose of executing this fraudulent scheme and each Defendant participated and acted with culpability in their conduct of its affairs.

## II.    PATTERN OF RACKETEERING ACTIVITY

45.     At all relevant times to this Complaint, the members of the 185 Recycling Enterprise, participated in, authorized or ratified the pattern of racketeering activity within the meaning of 18 U.S.C. § 1961(1) and (5).

46.     Beginning in approximately 2021 and continuing to the present, the 185 Recycling Enterprise engaged in a scheme to defraud SA Recycling by artificially inflating the weight of shreddable materials with non-recyclable material causing SA Recycling to make overpayments to Defendant 185 Recycling.

47.     In furtherance of this scheme, the 185 Recycling Enterprise committed numerous predicate acts of wire fraud in violation of 18 U.S.C. § 1343 by receiving, under fraudulent pretenses, ACH transfers of inflated payments through interstate wire communications.

48.     Each ACH transfer received pursuant to the artificially inflated weight constitutes

a separate act of wire fraud and a predicate act of racketeering activity.

49.     In addition, the 185 Recycling Enterprise committed numerous predicate acts of bribery by paying off the SA Involved Employees in exchange of their cooperation in the 185 Recycling Enterprise fraudulent scheme.

50.     The predicate acts alleged herein were related in purpose and implicated the same victim—SA Recycling. These predicate acts pose a threat of continued criminal activity.

51.     The 185 Recycling Enterprise engaged in at least two acts of racketeering activity within the last ten years as required by 18 U.S.C. § 1961(5) including but not limited to numerous acts wire fraud and bribery over the past four years.

52.     As a direct cause of the 185 Recycling Enterprise racketeering activity, SA Recycling has been greatly damaged due to the overpayments it made in good faith related to the 185 Recycling Enterprise's fraudulent practices.

### COUNT I – VIOLATION OF THE RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT 18 U.S.C. § 1962(C)
### (Against all Defendants)

53.     Plaintiff refers to and incorporates by reference all preceding paragraphs of this Complaint as though set forth in full herein.

54.     SA Recycling is a "person" within the meaning of 18 U.S.C. § 1961(3) and has standing to bring this action pursuant to 18 U.S.C. § 1964(c).

55.     Each of the Defendants is a "person" within the meaning of 18 U.S.C. § 1961(3).

56.     Defendant 185 Recycling, Defendant Mid Illinois Concrete, and Defendant Foster along with the SA Involved Employees established an association-in-fact enterprise within the meaning of 18 U.S.C. § 1961(4) and 1962(c), and were engaged in activities affecting interstate commerce at all times relevant to this Complaint.

57.     Defendants, through the 185 Recycling Enterprise, conducted and/or participated

directly or indirectly in the management and operation of the affairs of the 185 Recycling Enterprise through a pattern of racketeering activity within the meaning of 18 U.S.C. § 1961(1), 1961(5) and 1962(c). Additionally, Defendants' acts constitute repeated acts of bribery and wire fraud in violation of 18 U.S.C. § 1343.

58.    Each ACH transfer received by Defendants involving proceeds obtained in connection with the artificially inflated loads constitutes a separate act of wire fraud and therefore a predicate act of a racketeering activity.

59.    Each instance of soliciting and accepting of payment in connection to the fraudulent scheme committed by the Defendants constitutes a separate act of bribery and therefore is a predicate act of a racketeering activity.

60.    Defendants engaged in at least two acts of racketeering activity within the last ten years, thus falling within the provisions of 18 U.S.C. § 1961(5).

61.    Due to Defendants' actions, SA Recycling has suffered injury to its business and/or property within the meaning of 18 U.S.C. § 1964(c), including the payment of inflated sums, in an amount of at least four million dollars.

62.    In addition, SA Recycling is entitled to threefold damages including the cost of suit and reasonable attorneys' fees pursuant to 18 U.S.C. § 1964(c).

## COUNT II – VIOLATION OF THE RACKETEER INFLUENCED AND CORRUPT ORGANIZATIONS ACT 18 U.S.C. § 1962(D) BY CONSPIRING TO VIOLATE § 1962(C)
### (Against all Defendants)

63.    Plaintiff refers to and incorporates by reference all preceding paragraphs of this Complaint as though set forth in full herein.

64.    SA Recycling is a "person" within the meaning of 18 U.S.C. § 1961(3) and has standing pursuant to 18 U.S.C. § 1964(c).

65.    Each of the Defendants is a "person" within the meaning of 18 U.S.C. § 1961(3).

66.     At all relevant times, Defendant 185 Recycling, Defendant Mid Illinois Concrete, and Defendant Foster along with the SA Involved Employees constituted an association-in-fact enterprise within the meaning of 18 U.S.C. § 1961(4) and 1962(c), and were engaged in activities affecting interstate commerce at all times relevant to this Complaint.

67.     Defendants conspired among themselves within the meaning of 18 U.S.C. § 1962(d) to violate 18 U.S.C. § 1962(c) by conducting and participating in the affairs of the 185 Recycling Enterprise through patterns of racketeering within the meaning of 18 U.S.C. § 1961(1) and 18 U.S.C. § 1961(5).

68.     In furtherance of the conspiracy, Defendants agreed to and participated in a scheme to defraud SA Recycling by artificially inflating weights of shreddable material with non-recyclable material and receiving payments through repeated wire fraud transactions facilitated through ACH payments.

69.     Each Defendant was aware of the nature and scope of the conspiracy and knowingly joined and participated in said conspiracy with the intent that the objectives of the conspiracy be accomplished.

70.     Due to Defendants' actions, SA Recycling has suffered injury to its business or property within the meaning of 18 U.S.C. § 1964(c), including the payment of inflated sums, in an amount of at least four million dollars.

71.     In addition, SA Recycling is entitled to threefold damages including the cost of suit and reasonable attorneys' fees pursuant to 18 U.S.C. § 1964(c).

## **COUNT III – FRAUD**
### **(Against Defendant 185 Recycling and Defendant Foster)**

72.     Plaintiff refers to and incorporates by reference all preceding paragraphs of this Complaint as though set forth in full herein.

73.     Defendant 185 Recycling and Defendant Foster had superior knowledge that the materials presented to SA Recycling for sale contained non-recyclable materials that would artificially increase the weight of the materials causing SA Recycling to overpay for recyclable materials.

74.     Defendant 185 Recycling and Defendant Foster had a duty to disclose such facts to SA Recycling due to the confidence and trust between them as contracting partners over the years of doing business in the recycling business and because of the customs of the trade, one would reasonably expect a disclosure of such facts because without such disclosure SA Recycling would enter into the transaction as a mistake due to the fact that non-recyclable materials were no value to SA Recycling and would cause further costs to SA Recycling to dispose of such materials in addition to causing damage to its machinery.

75.     Defendant 185 Recycling and Defendant Foster failed to disclose such information, which amounted to a positive misrepresentation that the loads consisted primarily of recyclable materials.

76.     Defendant 185 Recycling and Defendant Foster's positive representations by nondisclosure about the actual content of the loads were false.  Further, Defendant 185 Recycling and Defendant Foster knowingly accepted payments they knew were inflated and inaccurate as result of their own fraudulent conduct. Moreover, Defendant 185 Recycling and Defendant Foster intended for SA Recycling to rely on their false representations by concealment.

77.     SA Recycling reasonably relied to its detriment on the false representations by concealment by Defendant 185 Recycling and Defendant Foster, had the right to rely on these representations by concealment, and had no reason to believe such representations were false or that material information was being concealed.

78.     Due to Defendant 185 Recycling and Defendant Foster's fraudulent actions, SA Recycling overpaid Defendants and suffered financial injury in an amount of at least four million dollars.

79.     Defendant 185 Recycling and Defendant Foster's conduct was willful, wanton, and malicious, entitling SA Recycling to an award of punitive damages.

### COUNT IV – CIVIL CONSPIRACY
**(Against all Defendants)**

80.     Plaintiff refers to and incorporates by reference all preceding paragraphs of this Complaint as though set forth in full herein.

81.     Defendants worked together for an unlawful objective to artificially inflate the weight of shreddables delivered to SA Recycling with non-recyclable material to cause SA Recycling to overpay for such materials.

82.     Defendants had a meeting of the minds and agreed to engage in the unlawful and wrongful conduct set forth above.

83.     Defendants engaged in such conduct in furtherance of the conspiracy to defraud money and property and to inflict substantial damages upon SA Recycling.

84.     As a direct result of Defendants' conduct, SA Recycling has been damaged in an amount of at least four million dollars exclusive of costs, expenses and attorneys' fees.

85.     Defendants' conduct was willful, wanton, and malicious, entitling SA Recycling to an award of punitive damages.

### COUNT V – UNJUST ENRICHMENT
**(Against Defendant 185 Recycling and Defendant Foster)**

86.     Plaintiff refers to and incorporates by reference all preceding paragraphs of this Complaint as though set forth in full herein.

87.     SA Recycling conferred a benefit upon Defendant 185 Recycling and Defendant

17

Foster by overpaying for artificially inflated shreddables.

88.     Defendant 185 Recycling and Defendant Foster thereby appreciated a benefit as SA Recycling's expense and it would be unjust and inequitable for Defendant 185 Recycling and Defendant Foster to retain said overpayments.

89.     SA Recycling is entitled to restitution and disgorgement in an amount equal to benefit wrongful conferred on 185 Recycling and Defendant Foster in an amount of at least four million dollars.

### COUNT VI – NEGLIGENT MISREPRESENTATION
### (Against Defendant 185 Recycling and Defendant Foster)

90.     Plaintiff refers to and incorporates by reference all preceding paragraphs of this Complaint as though set forth in full herein.

91.     Defendant 185 Recycling and Defendant Foster had superior knowledge that the materials presented to SA Recycling for sale contained non-recyclable materials that would artificially increase the weight of the materials causing SA Recycling to overpay for recyclable materials.

92.     Defendant 185 Recycling and Defendant Foster had a duty to disclose such facts to SA Recycling due to the confidence and trust between them as contracting partners over the years of doing business in the recycling business and because of the customs of the trade one would reasonably expect a disclosure of such facts because without such disclosure SA Recycling would enter into the transaction as a mistake due to the fact that non-recyclable materials were no value to SA Recycling and would cause further costs to SA Recycling to dispose of such materials in addition to causing damage to its machinery.

93.     Defendant 185 Recycling and Defendant Foster failed to disclose such information in the course of their business, which amounted to a positive misrepresentation that the loads

consisted primarily of recyclable materials.

94.    Defendant 185 Recycling and Defendant Foster's nondisclosure of such information amounted to a positive misrepresentation and such actions were due to Defendant 185 Recycling and Defendant Foster's failure to exercise reasonable care of competence in obtaining or communicating it.

95.    Defendant 185 Recycling and Defendant Foster intended to induce SA Recycling to act and rely on the information supplied and concealed concerning the weight of the shreddables and SA Recycling justifiably relied on such information.

96.    SA Recycling reasonably relied to its detriment on the false representations by concealment by Defendant 185 Recycling and Defendant Foster, had the right to rely on these representations by concealment, and had no reason to believe such representations were false or that material information was being concealed.

97.    As a direct result of Defendant 185 Recycling and Defendant Foster's conduct and SA Recycling's reliance on these representations by concealment, SA Recycling has been damaged in an amount currently believed to exceed four million dollars exclusive of costs, expenses and attorneys' fees.

## COUNT VII – BREACH OF CONTRACT
### (Against Defendant 185 Recycling)

98.    Plaintiff refers to and incorporates by reference all preceding paragraphs of this Complaint as though set forth in full herein.

99.    SA Recycling and Defendant 185 Recycling had a valid and enforceable contract for Defendant 185 Recycling to deliver shreddables free from foreign materials in exchange for payment for the true weight of the materials. Under the contract, Defendant 185 Recycling would bring truckloads of recyclable materials to SA Recycling's facilities for SA Recycling's purchase

as part of SA Recycling's recycling business. Defendant 185 Recycling knew or should have known that SA Recycling would only take shreddables free from foreign materials and that non-recyclable materials were no value to SA Recycling. Further, Defendant 185 Recycling, given its experience in the industry, knew or should have known that including foreign materials in any load would cause damage to SA Recycling's machinery and/or cause unnecessary costs to SA Recycling in having to remove and/or deal with the non-recyclable material. By bringing truckloads of materials to SA Recycling under the contractual arrangement, Defendant 185 Recycling represented that the materials in its truck loads were recyclable materials free from foreign materials and that were recyclable materials that would be appropriate for SA Recycling to run through its shredding machinery and process.

100. SA Recycling has performed all acts required of it under the contract other than those excused or waived by Defendant 185 Recycling.

101. Defendant 185 Recycling breached the contract by adding foreign materials to its truck loads to artificially increase the weight of the shreddables to generate increased payouts for the delivery loads, while at the same time causing further unnecessary processing expense to SA Recycling and increased costs to SA Recycling in having to deal with the unnecessary foreign and non-recyclable materials, thereby causing substantial damage to SA Recycling.

102. Due to Defendant 185 Recycling's breach, SA Recycling has been damaged in an amount of at least four million dollars exclusive of costs, expenses and attorneys' fees.

### COUNT VIII – CONVERSION
#### (Against Defendant 185 Recycling and Defendant Foster)

103. Plaintiff refers to and incorporates by reference all preceding paragraphs of this Complaint as though set forth in full herein.

104. SA Recycling had a right to possess and control the funds that it overpaid to

20

Defendant 185 Recycling and Defendant Foster for shreddable material.

105.    Defendant 185 Recycling and Defendant Foster took possession of the overpayments with the intent to exercise dominion and control of such overpayments.

106.    Defendant 185 Recycling and Defendant Foster deprived SA Recycling of the right to possession of the overpayments. Due to 185 Recycling and Defendant Foster's conversion, SA Recycling has been damaged in an amount of at least four million dollars exclusive of costs, expenses and attorneys' fees.

**COUNT IX – MONEY HAD AND RECEIVED**
**(Against 185 Recycling and Defendant Foster)**

107.    Plaintiff refers to and incorporates by reference all preceding paragraphs of this Complaint as though set forth in full herein.

108.    Defendant 185 Recycling and Defendant Foster caused SA Recycling to overpay for the costs of shreddables by artificially inflating the weight through the addition of concrete washout.

109.    Defendant 185 Recycling and Defendant Foster received and obtained possession of SA Recycling's overpayments and thereby appreciated a benefit.

110.    Defendant 185 Recycling and Defendant Foster's acceptance and retention of the overpayments was unjust.

111.    Due to Defendant 185 Recycling and Defendant Foster's conduct, SA Recycling has been damaged in an amount of at least four million dollars exclusive of costs, expenses and attorneys' fees.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment against Defendants as follows:

1.     That process be issued and served upon Defendants requiring it to answer this Complaint;

2.     That this Court enter judgment in favor of Plaintiff and against Defendants on all causes of action;

3.     That this Court award Plaintiff its compensatory and consequential damages in an amount to be determined at trial but no less than four million dollars ($4,000,000.00);

4.     That this Court enter an award of punitive damages against Defendants in an amount to be determined at trial;

5.     As to Counts I and II, that the Court award three-fold damages sustained by Plaintiff, including but not limited to the cost of Plaintiff's investigations, as well as its costs and reasonable attorney incurred in connection with this lawsuit this suit;

6.     That this Court award Plaintiff its costs an reasonable attorneys' fees; and

7.     That this Court award and further or other relief as its deems just and appropriate under the circumstances.

Respectfully submitted,

**SPENCER FANE LLP**

Dated: September 9, 2025          By: /s/ *Arthur D. Gregg*
    Arthur D. Gregg, #67098MO
    1 N. Brentwood Blvd., Suite 1200
    St. Louis, MO 63105
    Telephone (314) 863-7733
    Facsimile (314) 862-4656
    agregg@spencerfane.com

    Gabriel G. Green, Esq. (*Pro Hac Pending*)
    Lucas A. Davidson, Esq. (*Pro Hac Pending*)
    **BUCHALTER, A Professional Corporation**
    1000 Wilshire Blvd, Suite 1500
    Los Angeles, CA 90017
    Telephone: (213) 891-0700
    Fax: (213) 891-0700
    ggreen@buchalter.com
    ldavidson@buchalter.com

    *Counsel for Plaintiff SA Recycling LLC*

## JURY DEMAND

Plaintiff respectfully requests a trial by jury pursuant to Federal Rule of Civil Procedure 38 on any and all issues so triable.

/s/ *Arthur D. Gregg*