**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF MISSOURI**

| | | |
|---|---|---|
| SA RECYCLING LLC,<br><br>*Plaintiff*,<br><br>v.<br><br>ROUTE 185 RECYCLING, LLC, et al.,<br><br>*Defendants*. | ) | No. 4:25-cv-01349-JMD |

**MEMORANDUM AND ORDER OF PARTIAL DISMISSAL**

SA Recycling purchases scrap metal in bulk deliveries, paying for the metal by weight. The company asserts a multi-year wire-fraud scheme by many defendants to mix worthless product in with scrap metal, thus inflating the weight of deliveries, and a bribery scheme to induce lower-level employees of SA Recycling to accept these artificially inflated deliveries. The complaint asserts ten claims, including two under RICO. Defendants have filed three motions to dismiss for failure to state a claim. Because the Court concludes that SA Recycling has successfully stated a claim for some counts, but not others (including the RICO counts), the motions are granted in part and denied in part.

**Factual Background**

SA Recycling operates a scrap metal recycling facility in St. Louis, Missouri. SA Recycling purchases scrap metal delivered to its facility, which it then processes and sells. To calculate the price for deliveries, the company first weighs each delivery truck when the truck arrives at the facility. The scrap metal is then unloaded by crane, and the unloaded truck is weighed again. An inspector observes the unloading, and if either the inspector or the crane operator observes an excessive amount of non-recyclable material, then they deduct the material that is not of value to SA Recycling. The final price SA Recycling pays is based

on the difference in the weight between the loaded and unloaded truck, minus any deductions.

A different company, 185 Recycling, made regular deliveries to SA Recycling's facility.[1] Ryan Foster is the owner and manager of 185 Recycling. SA Recycling alleges that 185 Recycling artificially inflated the weight of its deliveries to SA Recycling by mixing concrete washout, a non-recyclable material, with scrap metal it delivered. 185 Recycling allegedly purchased the concrete washout from a third company, Mid-Illinois Concrete. SA Recycling alleges that Foster bribed two of SA Recycling's employees, inspector Oscar Ortiz and crane operator Juan Perez, to ignore the concrete washout in 185 Recycling's deliveries. SA Recycling further alleges that Perez used the crane to sweep out any remaining concrete washout from the trailers of 185 Recycling's trucks to further reduce their weight after the scrap metal was unloaded. SA Recycling paid 185 Recycling for the scrap metal via interstate wire transfers. Since 2021, SA Recycling has allegedly suffered injuries to its "business and/or property," including overpayments to 185 Recycling, of at least $4 million. ECF 57 ¶ 69. SA Recycling also alleges that it incurred additional costs because it had to ship the metals contaminated with concrete washout to a separate processing facility to remove the concrete washout and because customers purchasing metal from SA Recycling paid less for the metals contaminated with concrete washout that could not be removed.

In its first amended complaint, SA Recycling alleges ten counts against some or all of the many defendants. Against all defendants, it alleges a pattern of racketeering activity in violation of the Racketeer Influenced and Corrupt Organizations (RICO) Act, 18 U.S.C.

---

[1] SA Recycling sues both "Route 185 Recycling, LLC" and "185 Recycling, LLC." SA Recycling does not explain any material distinction between these entities. ECF 57 ¶¶ 5–6. Likewise, the motions to dismiss refer to these entities collectively. *See, e.g.*, ECF 63 at 6 n.1. At this stage in the litigation, the Court will proceed as the parties do, referring to both Route 185 Recycling, LLC and 185 Recycling, LLC collectively as "185 Recycling."

§ 1962(c) (Count I); a violation of § 1962(d) by conspiring to violate § 1962(c) (Count II); and a civil conspiracy (Count V). Against 185 Recycling and Foster, it also alleges fraud (Count III), unjust enrichment (Count VI), negligent misrepresentation (Count VII), conversion (Count IX), and money had and received (Count X). Against 185 Recycling, SA Recycling also alleges breach of contract (Count VIII). Against Mid-Illinois Concrete, SA Recycling also alleges aiding and abetting fraud (Count IV). Mid-Illinois Concrete moved to dismiss the claims against it.[2] 185 Recycling and Foster jointly moved to dismiss all the claims against them.[3] Foster also moved separately to dismiss.

**Legal Standard**

The defendants each allege that SA Recycling has failed to state a claim against them. Fed. R. Civ. P. 12(b)(6). To sufficiently state a claim for relief, a complaint must plead more than "legal conclusions" and "[t]hreadbare recitals of the elements of a cause of action [that are] supported by mere conclusory statements." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). SA Recycling must allege facts that demonstrate a plausible claim for relief, which requires more than a "mere possibility of

---

[2] Before SA Recycling filed its first amended complaint, ECF 57, Mid-Illinois Concrete moved to dismiss, ECF 45. Because "an amended complaint supercedes [sic] an original complaint and renders the original complaint without legal effect," *Schlafly v. Eagle Forum*, 970 F.3d 924, 933 (8th Cir. 2020) (citation omitted), the motion to dismiss SA Recycling's original complaint is moot.

[3] Neither defendants Ortiz nor Perez have been served with the first amended complaint, though Perez was served with the original complaint and nevertheless failed to answer. ECF 37. SA Recycling believes that both Ortiz and Perez are attempting to evade service. SA Recycling requests the Court once again extend its deadline to serve Perez and Ortiz with the first amended complaint. ECF 90. The Court must extend the deadline to serve a party for "good cause," and the Court may extend it for "excusable neglect." *Kurka v. Iowa Cnty., Iowa*, 628 F.3d 953, 957 (8th Cir. 2010) (citation omitted). Good cause is "likely . . . to be found when . . . the defendant has evaded service of process or engaged in misleading conduct" or when "the plaintiff has acted diligently in trying to effect service." *Id.* The Court is persuaded that SA Recycling has acted diligently in attempting to serve Ortiz and Perez. The Court will grant SA Recycling's motion and will extend the deadline to serve Ortiz and Perez until 60 days after the issuance of this memorandum and order.

misconduct." *Id.* at 679. "A claim has facial plausibility when the plaintiff pleads factual content that allows the Court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (citing *Twombly*, 550 U.S. at 556). In reviewing SA Recycling's first amended complaint, the Court must "accept as true the facts alleged, but not legal conclusions." *Barton v. Taber*, 820 F.3d 958, 964 (8th Cir. 2016) (citing *Iqbal*, 556 U.S. at 678). Because some of SA Recycling's counts allege fraud, these counts are subject to the heightened pleading standard of Federal Rule of Civil Procedure 9(b). That is, SA Recycling must "state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b).

## Analysis

### I. Violation of RICO and Conspiracy to Violate RICO

As alleged, SA Recycling's first amended complaint fails to state a claim against all defendants for a violation of RICO. 18 U.S.C. § 1962(c) provides: "It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt." Among other things, stating a claim for a violation of § 1962(c) requires SA Recycling to show "(1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity." *Crest Constr. II, Inc. v. Doe*, 660 F.3d 346, 353 (8th Cir. 2011) (citation omitted). As the defendants correctly point out, SA Recycling fails to adequately allege the existence of an enterprise.

Notably, SA Recycling does not allege that the "enterprise" in this case was an "individual, partnership, corporation, association, or other legal entity." § 1961(4). *See Atlas Pile Driving Co. v. DiCon Fin. Co.*, 886 F.2d 986, 996 (8th Cir. 1989) ("Separating the enterprise from the pattern of racketeering is generally not problematic where a legal entity is involved, since this entity is likely to be clearly distinct from the acts of racketeering."

(cleaned up)). Instead, SA Recycling alleges that all the defendants together formed an "association-in-fact" enterprise. ECF 57 ¶ 64; *see* § 1961(4) (defining "enterprise" to include "any union or group of individuals associated in fact although not a legal entity").

That requires SA Recycling to plead several things. True, the company need not plead a structure like traditional "organized crime" because "RICO also imposes civil liability on other types of organizations." *Atlas Pile Driving Co.*, 886 F.2d at 990; *see also Boyle v. United States*, 556 U.S. 938, 944 (2009) (describing RICO's definition of enterprise as "broad"). But SA Recycling must plead that the organization has "(1) a common purpose that animates the individuals associated with it," "(2) an ongoing organization with members who function as a continuing unit," and "(3) an ascertainable structure distinct from the conduct of a pattern of racketeering." *Crest Constr. II, Inc.*, 660 F.3d at 354 (citation omitted). "These characteristics are mandated in order to avoid the danger of guilt by association that arises because RICO does not require a proof of a single agreement as in a conspiracy case." *Atlas Pile Driving Co.*, 886 F.2d at 996 (cleaned up). This Court must also ensure that the "'enterprise' alleged" involves "more than an association of criminals for the commission of sporadic crime." *United States v. Lemm*, 680 F.2d 1193, 1198 (8th Cir. 1982).

The association-in-fact enterprise alleged by SA Recycling does not qualify as an "enterprise" under the precedent of the Eighth Circuit. As alleged, the existence of the enterprise revolves around making money through fraudulently obtaining overpayment for 185 Recycling's deliveries, which SA Recycling paid for via interstate wire transfer. Foster owns and manages 185 Recycling. 185 Recycling purchased concrete washout from Mid-Illinois Concrete. Foster bribed Ortiz and Perez to ignore and cover up the presence of concrete washout in 185 Recycling's deliveries. In other words, the "only common factor that linked the individually named defendants and defined them as a distinct group was their

direct or indirect participation in the . . . scheme to defraud the plaintiff." *Crest Constr. II, Inc.*, 660 F.3d at 355 (cleaned up). That is not enough. *Id.*

SA Recycling says the common purpose was to make money. But the company must plead more than that; it must establish "some sort of discrete existence and structure uniting its members in a cognizable group." *Nelson v. Nelson*, 833 F.3d 965, 968 (8th Cir. 2016) (holding that a plaintiff did not plead an "enterprise" even though he alleged all the defendants helped to run the same farming business). SA Recycling correctly notes that a RICO enterprise can exist even if individuals have different roles and uneven degrees of involvement, but in the Eighth Circuit, activities still must be "attributable to[] the group as a whole." *Id.*

SA Recycling has not established that standard. SA Recycling says Mid-Illinois sold Foster and 185 Recycling concrete washout, and then Foster and 185 Recycling bribed Ortiz and Perez to look the other way when 185 Recycling delivered mixed product. That certainly is enough to link Perez, Ortiz, and Mid-Illinois Concrete to Foster, but it is not necessarily enough to link Perez, Ortiz, and Mid-Illinois to each other. Merely alleging that these parties "played roles in [Foster's] overarching scheme and thus participated in the scheme to defraud . . . does not automatically turn their disjointed activities into a group effort." *Id.* at 969 (cleaned up). For example, Mid-Illinois selling concrete washout merely alleges "different subsets of the group pursuing their own ends separately," not individuals "function[ing] together as a coherent unit," as required by Eighth Circuit precedent. *Id.* at 968; *cf. Iqbal*, 556 U.S. at 680 (explaining that in *Twombly* "parallel conduct . . . did not plausibly suggest an illicit accord because it was not only compatible with, but indeed was more likely explained by, lawful, unchoreographed free-market behavior"). As alleged, this case is more akin to a case of "ordinary commercial fraud" by Foster and 185 Recycling. *Stonebridge Collection, Inc.*

*v. Carmichael*, 791 F.3d 811, 822 (8th Cir. 2015) (cleaned up). Because SA Recycling fails to allege the existence of an enterprise, it fails to state a claim for violation of RICO.

Without an underlying violation of 18 U.S.C. § 1962(c), SA Recycling cannot succeed in asserting a violation of RICO conspiracy under § 1962(d). *See In re Crop Inputs Antitrust Litig.*, 749 F. Supp. 3d 992, 1018 (E.D. Mo. Sep. 13, 2024) (collecting cases expressing that "to allege a RICO conspiracy, a plaintiff must first establish a right to relief under § 1962(c)" (cleaned up)). The Court therefore will dismiss both SA Recycling's claim for a violation of § 1962(c) and its claim for a violation of § 1962(d).

But RICO is a complex and confusing statute with many pitfalls and possibilities. The Court is not presently persuaded that amendment of SA Recycling's complaint would be futile for these claims. *Knowles v. TD Ameritrade Holding Corp.*, 2 F.4th 751, 758 (8th Cir. 2021) ("It is well settled that a district court may dismiss a complaint with prejudice under Rule 12(b)(6) when amendment of a complaint would be futile."). Therefore, the Court will dismiss these counts *without* prejudice and permit SA Recycling to seek leave to amend within 21 days. *See* ECF 74 at 7 (seeking leave to amend).

## II. Breach of Contract, Unjust Enrichment, and Money Had and Received

### A.

Contrary to 185 Recycling's and Foster's contention, SA Recycling's claim for breach of contract may proceed. "To establish a submissible case of breach of contract," SA Recycling "must first establish the existence of an agreement." *Fedynich v. Massood*, 342 S.W.3d 887, 891 (Mo. Ct. App. 2011) (citation omitted). SA Recycling alleges the existence of an "implied contract pursuant to which Defendant 185 Recycling sold shreddable materials to SA Recycling based on the weight of said materials and according to the purchase price set by SA Recycling based on the market." ECF 57 ¶ 23. In its response to the motion to dismiss, SA Recycling clarifies that it alleges that "each transaction" between it and 185 Recycling

was a contract. ECF 76 at 31; *cf. Hennessey v. Gap Inc.*, 86 F.4th 823, 831 (8th Cir. 2023) (explaining that "each of" plaintiff's "product purchases was an express contract, memorialized by the payment receipt"). SA Recycling alleges that 185 Recycling breached these contracts by adding concrete washout to its truck loads. Although SA Recycling does not allege the existence of a written contract, Missouri law recognizes a contract implied-in-fact "even though it was not reduced to writing." *Smith-Scharff Paper Co. v. P.N. Hirch & Co. Stores, Inc.*, 754 S.W.2d 928, 930 (Mo. Ct. App. 1988).

185 Recycling and Foster press two counterarguments for why these allegations are insufficient. Both arguments fail.

First, the statute of frauds does not render the alleged contracts unenforceable. True, the statute of frauds provides that "a contract for the sale of goods for the price of five hundred dollars or more is not enforceable . . . unless there is some writing sufficient to indicate that a contract for sale has been made between the parties." Mo. Rev. Stat. § 400.2-201(1). But the statute of frauds contains the express exemption that an unwritten contract "which is valid in other respects is enforceable . . . with respect to goods for which payment has been made and accepted or which have been received and accepted." *Id.* § 400.2-201(3)(c). SA Recycling alleges that it paid 185 Recycling for its deliveries, so the exemption to the statute of frauds applies.

Second, the alleged contracts are not void for failure to state essential terms. "To form a contract, the parties must mutually assent to its terms." *Fedynich*, 342 S.W.3d at 891. "The nature and extent of the contract's essential terms must be certain or capable of certain interpretation. . . . In other words, the terms must be sufficiently definite to enable the court to give it an exact meaning." *Id.* (citations omitted). 185 Recycling and Foster argue that an essential term of any alleged contract, the price, was not agreed upon. *See id.* at 891–92 (explaining that "[n]o contract is formed where the terms of the agreement are unduly

uncertain or indefinite" and that "[i]f the parties have reserved the essential terms of the contract for future determination, there can be no valid agreement" (citations omitted)). But "[f]ailure to specify the selling price in dollars and cents d[oes] not render the contract void or voidable. . . . As long as the parties agreed to a method by which the price was to be determined and as long as the price could be ascertained at the time of performance, the price requirement for a valid and enforceable contract [i]s satisfied." *Sedmak v. Charlie's Chevrolet, Inc.*, 622 S.W.2d 694, 697 (Mo. Ct. App. 1981). Further, the conduct of the parties can establish how a party is to be paid. *Hall v. Fox*, 426 S.W.3d 23, 26 (Mo. Ct. App. 2014); *see also Fedynich*, 342 S.W.3d at 891 ("In determining whether there has been a meeting of the minds, the court can look to the intention of the parties as expressed or manifested in their words or acts."); *Smith-Scharff Paper Co.*, 754 S.W.2d at 930 (explaining that a court seeking to find the agreement in an implied contract "must look to the parties' bargain . . . in fact as found in their language or by implication from other circumstances including course of dealing" (citation omitted)). Here, SA Recycling alleges regular deliveries by 185 Recycling, for which the method of determining the price was the same. Because the conduct alleged by SA Recycling establishes agreement as to how the price would be calculated, and because "[a] contract should not be held void for uncertainty unless there is no possibility of giving meaning to the agreement," *Comput. Network, Ltd. v. Purcell Tire & Rubber Co.*, 747 S.W.2d 669, 676 (Mo. Ct. App. 1988), the Court will not hold the alleged contracts void for failure to state an essential term. Therefore, 185 Recycling's and Foster's arguments against the breach of contract claim fail, and the Court will not dismiss the breach of contract claim at this time.

**B.**

185 Recycling and Foster next challenge SA Recycling's claim for unjust enrichment. To state a claim for unjust enrichment under Missouri law, a plaintiff must allege sufficient

facts showing "(1) that the defendant was enriched by the receipt of a benefit; (2) that the enrichment was at the expense of the plaintiff; and (3) that it would be unjust to allow the defendant to retain the benefit." *Exec. Bd. of Mo. Baptist Convention v. Windermere Baptist Conf. Ctr.*, 280 S.W.3d 678, 697 (Mo. Ct. App. 2009) (cleaned up).

Although SA Recycling alleges breach of contract, it may also allege unjust enrichment as an alternative theory of liability. As 185 Recycling and Foster point out, "[t]here can be no unjust enrichment claim . . . where an express contract exists." *Topchian v. JPMorgan Chase Bank, N.A.*, 760 F.3d 843, 854 (8th Cir. 2014) (citation omitted); *see also Am. Eagle Waste Indus., LLC v. St. Louis Cnty.*, 379 S.W.3d 813, 828–29 (Mo. 2012) (explaining that "a contract implied in law is not actually a contract and, instead, is an obligation to do justice where no promise was ever made or intended" (citation omitted)). But that does not automatically prohibit pleading in the alternative. Despite SA Recycling alleging the existence of contracts-in-fact, "it would be improper to dismiss the claim for unjust enrichment at this early pleading stage to the extent such claims may properly be pleaded in the alternative." *Slaughter v. Bass Pro, Inc.*, 648 F. Supp. 3d 1108, 1123 (W.D. Mo. 2023) (citing Fed. R. Civ. P. 8(d)(2)). After all, as this litigation proceeds, it may turn out that the alleged contracts are unenforceable. *Cf. Topchian*, 760 F.3d at 854 (analyzing whether an unjust enrichment claim could proceed if the contract in dispute was "not enforceable"). Although SA Recycling did not explicitly state that it alleges unjust enrichment as an alternative theory of liability, the Court will not hold that against it here. *Chem Gro of Houghton, Inc. v. Lewis Cnty. Rural Elec. Co-op. Ass'n*, No. 2:11-cv-00093-JCH, 2012 WL 1025001, at *3 (E.D. Mo. Mar. 26, 2012). While SA Recycling "may not recover under both breach of contract and unjust enrichment," it "is permitted to plead both claims." *Id.*

185 Recycling and Foster also assert that SA Recycling received what it intended to obtain, so the company cannot allege unjust enrichment. They argue that because SA Recycling had inspectors who examined deliveries of scrap metal and issued deductions for non-recyclable materials, SA Recycling was aware of the presence of concrete washout in 185 Recycling's deliveries and knowingly accepted the deliveries. They highlight that an unjust enrichment claim must fail when the plaintiff "received the products [it] intended to purchase." *Hennessey*, 86 F.4th at 831. But knowledge cannot be imputed to SA Recycling if the company's employees were bribed to abandon their duties. "It is the law . . . that where a person colludes with an agent to cheat the principal, the latter is not responsible for the acts or knowledge of the agent." *Colegrove v. John Hancock Mut. Life Ins. Co.*, 153 S.W.2d 750, 751 (Mo. Ct. App. 1941). Because defendants Ortiz and Perez allegedly were part of the scheme that harmed only SA Recycling, their knowledge of the concrete washout cannot bind SA Recycling. *See also Lumbermens Mut. Cas. Co. v. Thornton*, 92 S.W.3d 259, 270 (Mo. Ct. App. 2002) (describing the "adverse interest exception" that "if the agent's actions were to the detriment to the principal, then the agent's actions will not be imputed to the principal except under very limited circumstances"); *cf. Chong v. Parker*, 361 F.3d 455, 458 (8th Cir. 2004) (explaining that an "agent's knowledge of his own unauthorized act . . . cannot be imputed to the corporation" (citation omitted)).

**C.**

185 Recycling and Foster argue that this Court should dismiss the claim for money had and received for the same reasons it should dismiss the claim for unjust enrichment. Because the claim for unjust enrichment cannot be dismissed, neither will the Court dismiss SA Recycling's claim for money had and received. *See also Fulton Nat. Bank v. Callaway Mem'l Hosp.*, 465 S.W.2d 549, 553 (Mo. 1971) (explaining that an action for money had and received "[e]ssentially . . . is one for unjust enrichment, and it partakes to some extent of

equitable principles, though not strictly such an action"); *Investors Title Co., Inc. v. Hammonds*, 217 S.W.3d 288, 293–94 (Mo. 2007) ("The action for money had and received has always been one favored in the law and the tendency is to widen its scope . . . so that, it has become axiomatic that the action lies where the defendant has received or obtained possession of the money of the plaintiff, which, in equity and good conscience, he ought to pay over to the plaintiff." (citation omitted)).

**III. Conversion**

In contrast to the claims above, 185 Recycling and Foster are correct that the claim for conversion should be dismissed. Conversion generally "is not the appropriate action when the claim is solely for the recovery of money." *Boswell v. Panera Bread Co.*, 91 F. Supp. 3d 1141, 1145 (E.D. Mo. 2015). "Money is the appropriate subject of conversion only when it can be described or identified as a specific chattel." *Dayton Constr., Inc. v. Meinhardt,* 882 S.W.2d 206, 208 (Mo. Ct. App. 1994). SA Recycling argues that its overpayments to 185 Recycling was a conversion. It cites *Penalosa Co-op. Exchange v. A.S. Polonyi Co.*, 745 F. Supp. 580, 587 (W.D. Mo. 1990), for the proposition that wire transfers can be subjects of conversion. ECF 76 at 32. But *Penalosa Co-op. Exchange* concerned funds "represented by checks and wire transfers" that were identifiable as specific chattel. *Penalosa Co-op. Exch.*, 745 F. Supp. at 587. Here, by contrast, SA Recycling does not point to "[s]pecific checks, drafts or notes." *Dayton Constr., Inc.*, 882 S.W.2d at 208. Nor does SA Recycling identify "proceeds from the sale of a specific piece of real estate," or stocks, or a specific amount of money deposited into a defendant's account for a specific use. *Express Scripts, Inc. v. Walgreen Co.*, No. 4:08-cv-01915-TCM, 2009 WL 4574198, at *5 (E.D. Mo. Dec. 3, 2009). In short, SA Recycling does nothing to identify the allegedly converted money as a specific chattel. Instead, SA Recycling merely alleges numerous "transfer[s] of funds" that included overpayments. *Gannon Int'l*

*Ltd. v. Blocker*, No. 4:10-cv-00835-JCH, 2011 WL 3438886, at *3 (E.D. Mo. Aug. 5, 2011). That alone is insufficient to identify the money converted as a specific chattel.

Nor do the facts alleged satisfy the "narrow exception" permitting conversion claims "in cases where the plaintiff delivers funds to the defendant for a specific purpose only to have the defendant divert those funds to another and different purpose." *Express Scripts, Inc.*, 2009 WL 4574198, at *4. SA Recycling does not allege that it wired funds to 185 Recycling with the intention that it use the money for a specific purpose. The general rule in Missouri law against conversion claims for money applies in this case. Because the Court believes amendment on this claim would be futile, the Court will dismiss SA Recycling's conversion claim with prejudice. *See Knowles*, 2 F.4th at 758.

## IV. Negligent Misrepresentation, Fraud, and Civil Conspiracy

### A.

185 Recycling and Foster correctly argue that SA Recycling's claim for negligent misrepresentation, as currently pleaded, is barred by the economic loss doctrine. The economic loss doctrine "prohibits a commercial buyer of goods 'from seeking to recover in tort for economic losses that are contractual in nature.'" *Dannix Painting, LLC v. Sherwin-Williams Co.*, 732 F.3d 902, 905–06 (8th Cir. 2013). The reasoning of the Eighth Circuit in *Dannix Painting* is on point. There, a plaintiff alleged that a seller made a negligent misrepresentation in recommending that a certain paint product it sold would be suitable for the plaintiff's project. *Id.* at 904. The Eighth Circuit affirmed dismissal for failure to state a claim, holding that the economic loss doctrine barred the cause of action. *Id.* The Eighth Circuit explained that "the economic loss . . . doctrine denies a remedy in tort to a party whose complaint is rooted in disappointed contractual or commercial expectations." *Id.* at 906 (citation omitted). The plaintiff there did not sue for the cost of the defective paint itself because "Missouri's economic loss doctrine bars recovery for negligence . . . 'where the only

damage is to the product sold.'" *Id.* (quoting *Sharp Bros. Contracting Co. v. Am. Hoist & Derrick Co.,* 703 S.W.2d 901, 903 (Mo. 1986)). Rather, the plaintiff sued for the costs it incurred in having to remove the defective paint and redo the work. *Id.* at 904. But the Eighth Circuit explained that economic loss includes "cost of repair and replacement of defective property which is the subject of the transaction, as well as commercial loss for inadequate value and consequent loss of profits or use." *Id.* at 905 (quoting *Groppel Co. v. U.S. Gypsum Co.,* 616 S.W.2d 49, 55 n.5 (Mo. Ct. App. 1981); *see also id.* (explaining that economic loss also includes "the diminution in the value of the product because it is inferior in quality and does not work for the general purposes for which it was manufactured and sold" (cleaned up)).

SA Recycling's negligent misrepresentation claim is similar to the claim barred in *Dannix Painting*. SA recycling alleges that it paid for products it could not use. It also alleges that it incurred costs in having to dispose of the metals contaminated with concrete washout. These costs are economic losses, so the negligent misrepresentation claim is barred by the economic loss doctrine. *Id.* at 909–10. Although the economic loss doctrine does not bar tort claims for damage to "property other than the product sold," *id.* at 910 (citation omitted), SA Recycling does not allege damage to other property. In its first amended complaint, SA Recycling states that 185 Recycling "should have known that including foreign materials in any load would cause damage to SA Recycling's machinery." ECF 57 ¶ 116; *see also id.* ¶¶ 83, 109. But SA Recycling nowhere alleges any actual damage to its machinery, and it did not argue this exception to the economic loss doctrine in its response to the motion to dismiss. *See Quintero Community Ass'n Inc. v. F.D.I.C.*, 792 F.3d 1002, 1009 (8th Cir. 2015) (admonishing that the court "without guidance . . . will not mine a [lengthy] complaint searching for nuggets that might refute obvious pleading deficiencies"). If SA Recycling's

machinery was in fact damaged by the concrete washout contaminants, then perhaps SA Recycling may be able to salvage its negligent misrepresentation claim by seeking leave to amend its complaint. For now, however, the Court will dismiss the count without prejudice.

**B.**

185 Recycling and Foster also argue that the economic loss doctrine bars SA Recycling's claim for fraud. But the answer to that question right now is academic. The Court is permitting SA Recycling to proceed on its claim of breach of contract. If it prevails on that claim, SA Recycling will not also be allowed a double recovery by also pursuing its claim for fraud. *Kincaid Enters., Inc. v. Porter*, 812 S.W.2d 892, 900 (Mo. Ct. App. 1991). Only if further litigation undermines the claim for breach of contract will the Court need to consider SA Recycling's claim for fraud.

The Court notes, however, that it is not clear how or whether the economic loss doctrine would apply. In applying Missouri law, this Court "must predict" how the Supreme Court of Missouri "would rule," and this Court "follow[s] the decisions from the intermediate state courts when they are the best evidence of Missouri law." *Dannix Painting*, 732 F.3d at 905. Although the Eighth Circuit held that the economic loss doctrine bars fraud claims that are "substantially redundant with warranty claims" as a matter of Minnesota law, *Marvin Lumber and Cedar Co. v. PPG Industries, Inc.*, 223 F.3d 873, 885 (8th Cir. 2000), "Missouri law . . . expressly limits this doctrine to warranty and negligence of strict liability claims," *Vogt v. State Farm Life Ins. Co.*, 963 F.3d 753, 774 (8th Cir. 2020) (holding that Missouri's economic loss doctrine does not bar a claim for conversion); *see also id.* (agreeing with the district court that "Missouri courts have never extended the economic loss doctrine beyond the doctrine's traditional moorings as policing the boundaries between warranty and negligence" (citation omitted)); *see also Dunne v. Res. Converting, LLC*, 991 F.3d 931, 943 (8th Cir. 2021) (holding that the court "will not expand the economic loss doctrine beyond the

contexts in which it has been applied by Missouri courts" and declining to apply the doctrine to an agreement that was not governed by the Uniform Commercial Code).

Some district courts nonetheless have applied the economic loss doctrine to bar claims for fraud when the misrepresentations alleged are the same misrepresentations that are the basis of a plaintiff's contract-based claims. *See, e.g.*, *Nestle Purina Petcare Co. v. Blue Buffalo Co. Ltd.*, 181 F. Supp. 3d 618, 639 (E.D. Mo. 2016). In "examining whether a fraud claim is independent of a contract claim under the economic loss doctrine," these courts have looked at "(1) whether the subject matter of the alleged misrepresentations was incorporated into the parties' contract; and (2) whether the plaintiff suffered additional damages outside the contract as a result of the alleged fraud." *Id.* at 638; *see also Robinson Mech. Contractors Inc. v. PTC Grp. Holdings Corp.*, Case No. 1:15-CV-77 SNLJ, 2017 WL 3970602, at *4 (E.D. Mo. Sept. 8, 2017) (explaining that "[m]isrepresentations going to one party's ability to perform under a contract, so long as not actual contractual terms, do not implicate the economic loss doctrine"). As stated above, SA Recycling does not allege additional damages outside of the contract. So only the first factor would be relevant.

In assessing that first factor, some courts have distinguished between fraudulent misrepresentation and fraudulent inducement, which is "necessarily prior to the contract" and "is independent of the contract and therefore not barred by the economic loss doctrine." *See, e.g.*, *Trademark Med., LLC v. Birchwood Labs., Inc.*, 22 F. Supp. 3d 998, 1003 (E.D. Mo. 2014); *but see Nestle Purina Petcare*, 181 F. Supp. 3d at 641 (concluding that the economic loss doctrine did bar a fraudulent inducement claim when "alleged misrepresentations concern the same subject matter that is incorporated into the parties' contract, even though they were made prior to contract formation"). Similarly, when a party has pleaded breach of contract, some Missouri courts have permitted claims for fraudulent inducement—although double recovery is prohibited. *See, e.g.*, *Kincaid Enters.*, 812 S.W.2d at 900; *see also Clayton*

*Brokerage Co. of St. Louis v. Pilla*, 632 S.W.2d 300, 305–06 (Mo. Ct. App. 1982) ("It is the law that one who has been fraudulently induced into a contract may elect to stand by that contract and sue for damages for the fraud. When this happens and the defrauding party also refuses to perform the contract as it stands, he commits a second wrong, and a separate and distinct cause of action arises for the breach of contract." (cleaned up)). By contrast, some Missouri courts have held that a plaintiff may bring a separate claim for fraudulent misrepresentation "only if it arises from acts that are separate and distinct from the contract." *O'Neal v. Stifel, Nicolaus & Co., Inc.*, 996 S.W.2d 700, 702 (Mo. Ct. App. 1999).

Because the issue is academic, the Court will not venture to expand the economic loss doctrine beyond what the Supreme Court of Missouri or the Eighth Circuit has recognized. The precise terms of the alleged contracts remain ambiguous, and 185 Recycling and Foster argue that no contract was ever formed. ECF 63 at 24. Thus, the Court cannot say for certain whether the alleged misrepresentations were "incorporated into the parties' contract[s]." *Nestle Purina Petcare*, 181 F. Supp. 3d at 641. *Cf. W. Silver Recycling, Inc. v. Nidec Motor Corp.*, 509 F. Supp. 3d 1106, 1116 (E.D. Mo. 2020) (declining to dismiss because "[a]bsent further discovery, this Court cannot accurately determine whether" plaintiff's claims "are collateral to or interwoven in the contract" (cleaned up)).

185 Recycling and Foster press other arguments to dismiss the fraud claim. Those arguments also fail. They argue that because SA Recycling's employees inspected the deliveries, SA Recycling had no "right to rely" on a misrepresentation. *First Franklin Fin. Corp. v. Residential Title Servs., Inc.*, No. 4:07CV1478 JCH, 2009 WL 1508784, at *4 (E.D. Mo. May 28, 2009) (cleaned up). Once again, the knowledge of SA Recycling's allegedly bribed employees cannot be imputed to SA Recycling. *See Lumbermens Mut. Cas.*, 92 S.W.3d at 270.

185 Recycling and Foster also argue that SA Recycling fails to plead the fraud claim with the particularity required under Federal Rule of Civil Procedure 9(b). More, they

characterize SA Recycling's first amended complaint as a "shotgun pleading." *Moore v. Compass Grp. USA, Inc.*, Case No. 4:18-cv-01962-SEP, 2022 WL 4598558, at *10 (E.D. Mo. Sept. 30, 2022). The Court disagrees. Rule 9(b) requires a plaintiff to "plead the who, what, when, where, and how: the first paragraph of any newspaper story." *Crest Constr. II*, 660 F.3d at 353 (cleaned up). SA Recycling's first amended complaint goes into great detail about Foster and 185 Recycling's alleged scheme to obtain falsely inflated payments for deliveries, so the Court will not dismiss this claim for failure to satisfy Rule 9(b). *Cf. Abels v. Farmers Commodities Corp.*, 259 F.3d 910, 921 (8th Cir. 2001) (declining to "require, before discovery, the pleading of dates and times of communications in furtherance of a scheme to defraud, where the complaint alleges facts supporting the inference that the mails or wires were used"). As for the concern about shotgun pleading, Foster and 185 Recycling improperly raise this argument for the first time in their reply brief, but the Court will address it anyway because it does not change the Court's conclusion. It is true that SA Recycling's complaint "contains several counts, each one incorporating by reference the allegations of its predecessors." *Sagez v. Global Agr. Invest., LLC*, No. 11–CV–3059–DEO, 2015 WL 1647921, at *4 (N.D. Iowa Apr. 14, 2015). But this is not an "especially problematic" case in which the causes of action have "substantially different elements." *Id.* Indeed, many of SA Recycling's claims have similar elements. SA Recycling's first amended complaint is not "so general that it fails to put the various defendants on notice of the allegations against them." *Moore*, 2022 WL 4598558, at *10 (cleaned up). SA Recycling distinguishes its claims among the multiple defendants, and defendants have successfully moved to dismiss multiple claims. The Court declines to dismiss the count of fraud against Foster and 185 Recycling for failure to state a claim.

**C.**

The Court dismisses the civil conspiracy claim against Mid-Illinois Concrete for failure to state sufficient facts to support a meeting of the minds. "A civil conspiracy is an agreement or understanding between persons to do an unlawful act, or to use unlawful means to do a lawful act." *Gibson v. Brewer*, 952 S.W.2d 239, 245 (Mo. 1997). To state a claim for civil conspiracy under Missouri law, SA Recycling "must establish that two or more persons with an unlawful objective, after a meeting of the minds, committed at least one act in furtherance of the conspiracy, damaging the plaintiff." *Id.* To establish a meeting of the minds, "there must be evidence 'that any two of the Defendants involved in the alleged civil conspiracy met, negotiated, and more importantly, achieved a meeting of the minds to carry out some unlawful purpose.'" *Aguilar v. PNC Bank, N.A.*, 853 F.3d 390, 403 (8th Cir. 2017) (quoting *Intertel, Inc. v. Sedgwick Claims Mgmt. Servs., Inc.*, 204 S.W.3d 183, 204–05 (Mo. Ct. App. 2006)). "A meeting of the minds is present if each participant acted with 'a unity of purpose or a common design and understanding.'" *Id.* (quoting *Glob. Control Sys., Inc. v. Luebbert*, No. 4:14-CV-657-DGK, 2016 WL 910190, at *2 (W.D. Mo. Mar. 9, 2016)). As explained above, SA Recycling's first amended complaint fails to state a common purpose among *all* defendants (so there is not a RICO enterprise). The question, then, is whether a smaller subgroup of the defendants had a meeting of the minds.

SA Recycling fails to allege that Mid-Illinois Concrete had a meeting of the minds with any other defendant. The first amended complaint includes no facts to suggest that Mid-Illinois Concrete had any relationship at all with Perez or Ortiz. And although SA Recycling does allege that Mid-Illinois Concrete sold 185 Recycling concrete washout, "[m]ere cooperation between entities is not evidence of *specific facts* that show a meeting of the minds." *Jones v. Mississippi Cnty., Mo.*, Case No. 1:23-CV-150 SRW, 2024 WL 4664213, at

*4 (E.D. Mo. Nov. 4, 2024) (cleaned up). SA Recycling must state facts that show Mid-Illinois Concrete "*knowingly* performed any act or took any action to further or carry out the unlawful purposes of the conspiracy." *Chmieleski v. City Prods. Corp.*, 660 S.W.2d 275, 290 (Mo. Ct. App. 1983) (citation omitted) (emphasis added). True, SA Recycling expressly states that Mid-Illinois Concrete knew "that concrete washout was being used to weigh down Defendant 185 Recycling trucks to artificially increase the weight to cause SA Recycling to overpay for such material." ECF 57 ¶ 38. However, although "knowledge . . . may be alleged generally," Fed. R. Civ. P. 9(b), a plaintiff "cannot 'plead the bare elements of his cause of action . . . and expect his complaint to survive a motion to dismiss.'" *Allen v. Nature Conservancy*, 168 F.4th 1092, 1098 (8th Cir. 2026) (quoting *Iqbal*, 556 U.S. at 687). Rather, a meeting of the minds is often demonstrated by circumstantial evidence. *Chmieleski*, 660 S.W.2d at 289.

The circumstantial evidence alleged by SA Recycling fails to plausibly state a meeting of the minds. Under Missouri law, circumstantial evidence for a civil conspiracy claim must be "clear and convincing." *Id.* SA Recycling alleges that Mid-Illinois Concrete allowed 185 Recycling's trucks to pick up concrete washout from its facility multiple times a day and also made regular deliveries of concrete washout directly to 185 Recycling's facility. In its memorandum in opposition to Mid-Illinois Concrete's motion to dismiss, SA Recycling emphasizes that the concrete washout was a "burdensome, valueless material" for which Mid-Illinois Concrete received payment "despite its lack of legitimate value." ECF 75 at 11.[4] This circumstantial evidence does not clearly convince the court of a meeting of the minds to defraud SA Recycling. Instead, there is an "obvious alternative explanation" for Mid-Illinois

---

[4] Although SA Recycling first alleges the value of the concrete washout in its memorandum in opposition, the Court may still consider this alleged fact, *see Danielson v. Huether*, 355 F. Supp. 3d 849, 856 n.1 (D.S.D. 2018), and the fact is a fair inference from the allegations that are pleaded.

Concrete's conduct. *Cf. Twombly*, 550 U.S. 567. Mid-Illinois Concrete may have been eager to offload the "burdensome, valueless" concrete washout and did not look the proverbial gift horse in the mouth. Without "further factual enhancement," SA Recycling's first amended complaint "stops short of the line between possibility and plausibility of entitlement to relief." *Id.* at 557. The Court will dismiss SA Recycling's conspiracy claim against Mid-Illinois Concrete without prejudice.

By contrast, SA Recycling does sufficiently state a claim for conspiracy against the other defendants. The facts in SA Recycling's complaint clearly establish a meeting of the minds between 185 Recycling and Foster and Ortiz and Perez.[5] For example, SA Recycling alleges that Ortiz and Perez helped Foster and 185 Recycling conceal their concrete washout contaminated deliveries. ECF 57 ¶ 31 ("If the SA Involved Employees were not at their post or if the SA Recycling general manager was in the yard, the SA Involved Employees would inform Defendant Foster or the Defendant 185 Recycling drivers."). Foster and 185 Recycling make no successful arguments for dismissing the conspiracy claim, and Ortiz and Perez have not appeared. The Court will not dismiss the conspiracy claim against Foster, 185 Recycling, Ortiz, or Perez.

### V. Aiding and Abetting Fraud

Mid-Illinois Concrete moves to dismiss the claim SA Recycling alleges against it alone: "substantially assist[ing]" 185 Recycling's fraud. ECF 57 ¶ 95. Some jurisdictions recognize that claim. The Second Restatement of Torts § 876 provides: "For harm resulting to a third person from the tortious conduct of another, one is subject to liability if he (a) does a tortious

---

[5] SA Recycling does not dispute Foster and 185 Recycling's argument that Foster and 185 Recycling cannot conspire with each other because Foster is the "agent" of 185 Recycling and "[t]wo entities which are not legally distinct cannot conspire with one another." *Creative Walking, Inc. v. American States Ins. Co.*, 25 S.W.3d 682, 688 (Mo. Ct. App. 2000) (citation omitted).

act in concert with the other or pursuant to a common design with him, or (b) knows that the other's conduct constitutes a breach of duty and gives substantial assistance or encouragement to the other so to conduct himself . . . ." Mid-Illinois Concrete argues that the Supreme Court of Missouri is not one of the jurisdictions that accepts that claim. This Court agrees.

The Supreme Court of Missouri has never clearly accepted either tort law theory expressed in the Restatement. *Jo Ann Howard & Assocs., P.C. v. Cassity*, 868 F.3d 637, 651 (8th Cir. 2017). In *Zafft v. Eli Lilly & Co.*, 676 S.W.2d 241, 245 (Mo. 1984), the Missouri Supreme Court discussed § 876 among multiple other theories of tort liability, before affirming the dismissal of the claim for reasons unrelated to § 876, *id.* at 247. The Eighth Circuit has declined to hold that that the Missouri Supreme Court adopted § 876(a) in *Zafft*. *Jo Ann Howard & Assocs.*, 868 F.3d at 650–51. Further, the Eighth Circuit explicitly stated that *Zafft* "does not address aiding-and-abetting liability under" subsection 876(b). *Id.* at 651. This Court is "left with little guidance in an uncertain area." *Id.*; *see also Bradley v. Ray*, 904 S.W.2d 302, 315 (Mo. Ct. App. 1995) (locating no Missouri cases recognizing a claim for aiding and abetting a tort). Although there is one Missouri case where an intermediate appellate court applied § 876(b), *Shelter Mut. Ins. Co. v. White*, 930 S.W.2d 1, 3 (Mo. Ct. App. 1996), the Eighth Circuit declined to follow that case, saying it was "based on an overreading of *Zafft*," *Jo Ann Howard & Assocs.*, 868 F.3d at 651. The Court will follow the Eighth Circuit's example, "exercis[ing] caution in expanding state-law theories of liability that are not foreshadowed by state precedent." *Id.* The Court therefore dismisses with prejudice SA Recycling's claim for aiding and abetting.

**VI. Foster's Motion to Dismiss**

Individually, Foster argues that he cannot be liable as the owner of 185 Recycling, a limited liability company. Foster's argument fails because SA Recycling alleges individual

conduct by Foster and individual benefits to him. Foster and SA Recycling disagree over whether Missouri or Illinois law applies. But the Court need not do a conflict of laws analysis because both laws provide that a member is not liable for the liabilities of an LLC "solely by reason of being a member." Mo. Rev. Stat. § 347.057; 805 Ill. Comp. Stat 180/10-10(a) ("A member or manager is not personally liable for . . . liability of the company solely by reason of being or acting as a member or manager."). The complaint seeks to impose liability against Foster for being *more* than just a member.

Foster cites *Graber, Inc. v. W & Z Contracting Construction, LLC*, No. 4:19 CV 67 CDP, 2021 WL 5918715 (E.D. Mo. Dec. 15, 2021), in support of his conclusion. But the plaintiff there did not allege that the member "obtained any individual benefit by his conduct" and did not "show how he proximately caused injury by his individual conduct rather than in his position as a member of the LLC." *Id.* at *9; *cf. Driscoll Firm, P.C. v. Fed. City L. Grp., PLLC,* No. 22-CV-1536, 2023 WL 2375218, at *6 (N.D. Ill. Mar. 6, 2023) (explaining that under Illinois law "a member or manager who actively participates in an LLC's torts may be personally liable for those torts"). Here, SA Recycling alleges many individual actions by Foster, such as telling Perez "that he would not be paid his bribe if [185 Recycling's trucks] weighed more than fifty thousand pounds unloaded" and directing 185 Recycling's drivers to wait outside the facility until only Ortiz and Perez were in the yard. ECF 57 ¶¶ 27, 30–31. SA Recycling also alleges that it "conferred a benefit upon Defendant 185 Recycling and Defendant Foster." *Id.* ¶ 104. SA Recycling does not allege Foster is liable solely because he is the owner of 185 Recycling, so Foster cannot escape liability simply because he is a member of an LLC.

## Conclusion

**IT IS HEREBY ORDERED** that defendant Mid-Illinois Concrete's first motion to dismiss is **DENIED** as moot. ECF 45.

**IT IS FURTHER ORDERED** that defendant Mid-Illinois Concrete's second motion to dismiss is **GRANTED** in part and **DENIED** in part. ECF 67.

**IT IS FURTHER ORDERED** that defendants 185 Recycling's and Ryan Foster's joint motion to dismiss is **GRANTED** in part and **DENIED** in part. ECF 62.

**IT IS FURTHER ORDERED** that defendant Ryan Foster's motion to dismiss is **DENIED**. ECF 65.

**IT IS FURTHER ORDERED** that Counts I, II, and VII are dismissed without prejudice.

**IT IS FURTHER ORDERED** that Count V is dismissed without prejudice as to defendant Mid-Illinois Concrete.

**IT IS FURTHER ORDERED** that Counts IV and IX are dismissed with prejudice.

**IT IS FURTHER ORDERED** that plaintiff SA Recycling's motion for an extension of time to serve process on defendants Oscar Ortiz and Juan Perez is **GRANTED**. ECF 90. SA Recycling shall have 60 days from the issuance of this order to serve Ortiz and Perez.

Dated this 18th day of September, 2026

Joshua Divine

JOSHUA M. DIVINE
UNITED STATES DISTRICT JUDGE
FOR THE EASTERN AND WESTERN
DISTRICTS OF MISSOURI